UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KF TEA USA INC. & <br><br> KF TEA FRANCHISING LLC, <br><br>     Plaintiffs, <br><br> v. <br><br> H&Z LLC, <br><br> JEREMY ZHANG, & <br><br> BRANDON HOPPER <br><br>     Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT

Plaintiffs KF Tea USA Inc. ("KFT USA") and KF TEA Franchising LLC ("KFT Franchising") (collectively "Plaintiffs") allege as follows for their Complaint against Defendants H&Z LLC ("Franchisee"), Jeremy Zhang ("Zhang"), and Brandon Hopper ("Hopper") (together with Zhang, "Guarantors") (Guarantors collectively Franchisee, "Defendants"):

1.    Plaintiffs bring this matter as a result of Defendants' continued actions after Plaintiff KFT Franchising terminated the Franchise Agreement (defined below) entered into between it and Franchisee, guaranteed by Defendants Zhang and Hopper.

## THE PARTIES

2.    Plaintiff KFT USA is a New York corporation with a principal place of business at 589 8th Avenue, 17th Floor, New York, New York 10018. Plaintiff KFT USA is the owner of certain KUNG FU TEA trademarks, which it licenses to Plaintiff KFT Franchising and which are identified further below.

1

3.     Plaintiff KFT Franchising is a Delaware limited liability company with a principal place of business at 589 8th Avenue, 17th Floor, New York, New York 10018. Plaintiff KFT Franchising entered into a Franchise Agreement (defined below) with Franchisee and guaranteed by Defendants Zhang and Hopper. Among other things, the Franchise Agreement (defined below) granted Franchisee a license to use certain KUNG FU TEA trademarks, which are identified below.

4.     Defendant Franchisee is a Virginia Limited Liability Company with its principal place of business at 25330 Pleasant Valley Road, Chantilly, Virginia 20152.

5.     Defendant Zhang is a Virginia resident having a last known address at 1095 Venifena Terrace SE, Leesburg, Virginia 20175.

6.     Defendant Hopper is a Virginia resident, having a last known address at 15301 Wits End Drive, Woodbridge, Virginia 22193.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## FACTS
### The Trademarks

9.     Plaintiff KFT USA began operations of KUNG FU TEA branded bubble tea shops (the "Tea Shops") using the Trademarks in May 2010 and continues to do so.

10.     Plaintiffs' KUNG FU TEA branded Tea Shops are the largest American bubble tea chain, with more than 350 locations across the United States. There are locations of Plaintiffs' KUNG FU TEA branded Tea Shops in Richmond, Virginia; Virginia Beach, Virginia; Norfolk, Virginia; Hampton, Virginia; and Blacksburg, Virginia. There are also locations in Ohio, North

Carolina, Tennessee, New York, California, Texas and Florida, as well as other states. Plaintiffs' KUNG FU TEA branded Tea Shops offer patrons drinks, beverages and confections.

11.     On April 30, 2018 Plaintiffs' KUNG FU TEA branded Tea Shops founded the world's first National Bubble Tea Day.

12.     In 2021, Plaintiffs' KUNG FU TEA branded Tea Shops were listed among Nation's Restaurant News Top 500 Restaurant Chains.

13.     In 2025, Plaintiffs' KUNG FU TEA branded Tea Shops were among Yelp's Top 50 Most Loved Brands. It was the only bubble tea brand featured on the 2025 list, which recognizes companies with exceptional customer love based on Yelp's data.

14.     Plaintiffs' KUNG FU TEA branded Tea Shops have collaborated with prominent and well-known brands. Plaintiffs' KUNG FU TEA branded Tea Shops have, for example, collaborated with Funimation (drinks based on the anime *Fruits Basket*); Barbie; Nintendo; Pokemon; Spirit Halloween; Opening Ceremony; *How to Train Your Dragon*; Strawberry Shortcake; Capcom; and *The Lord of the Rings*.

15.     Plaintiffs' KUNG FU TEA branded Tea Shops have an active online and social media presence. The website for Plaintiffs' KUNG FU TEA branded Tea Shops can be found at www.kungfutea.com. A screen shot from the website appears below.

3



In 2025 the website had in excess of ___ visitors.

16.     The Instagram page for Plaintiffs' KUNG FU TEA branded Tea Shops can be found at https://www.instagram.com/kungfuteausa/. The Instagram page has 418,000 followers.

17.     The TikTok page for Plaintiffs' KUNG FU TEA branded Tea Shops is located at https://www.tiktok.com/@kungfutea?lang=en. The TikTok page has over 274,000 followers.

18.     The Facebook page for Plaintiffs' KUNG FU TEA branded Tea Shops is located at https://www.facebook.com/kungfuteausa/. There are 49,000 followers of the Facebook page.

19.     Plaintiff KFT USA began using the KUNG FU TEA mark as early as April 30,



2010. Stylized logos, such as              , were adopted in 2016.

20.     Plaintiff KFT Franchising is the licensee of the Trademarks and the franchisor of the franchised Tea Shops, offering its franchisees the right to own and operate Tea Shops at approved locations.

21.     Since 2010, Plaintiffs and their affiliates have been the exclusive source of the

4

Kung Fu Tea brand.

22.     Additionally, Plaintiffs and their affiliates have made extensive and continuous use of the Trademarks in United States commerce through their authorized franchisees since at least as early as 2011.

23.     The Trademarks have obtained national recognition and fame and become an indicator of the source of Plaintiffs' goods and services and a symbol of substantial and valuable goodwill.

24.     Plaintiff KFT USA is the sole owner of all right, title and interest in and to the following Trademarks which are legally and validly registered with the Principal Register of the United States Patent and Trademark Office ("USPTO"). There are no other federally registered trademarks that use the term "KUNG FU TEA" for any services or goods:

| Trademark | U.S. Registration No. | Goods/Services | First Use in Commerce | Status |
|---|---|---|---|---|
| KUNG FU TEA | 4,497,687 | Int'l Class: 43 Restaurant services featuring non-alcoholic drinks, beverages, pastries, and confections | April 30, 2010 | Active (Registered, March 18, 2014; 8 & 15 accepted Nov. 15, 2020) |

| Trademark | U.S. Registration No. | Goods/Services | First Use in Commerce | Status |
|---|---|---|---|---|
| KUNG FU TEA | 4,857,505 | Int'l Class: 30, 32 (Int'l Class: 30) Tea; tea-based flavored drinks and beverages; tea-based slush-type drinks; pastries containing tea, Tea-based smoothies (Int'l Class: 32) fruit-flavored smoothies containing tea; fruit-flavored slush-type drinks containing tea | April 30, 2010 | Active (Registered, November 24, 2015; 8 & 15 accepted May 14, 2022) |
| KUNG FU TEA and Design | 5,443,929 | Int'l Class: 30 Tea; tea-based flavored drinks and beverages; tea-based slush-type drinks; tea-based smoothies | January 1, 2016 | Active (Registered: April 10, 2018; 8 & 15 accepted Oct. 4, 2024) |
| KUNG FU TEA and Design | 5,443,930 | Int'l Class: 32 Fruit-flavored smoothies containing tea; fruit-flavored slush-type drinks containing tea | January 1, 2016 | Active (Registered, April 10, 2018; 8 & 15 accepted Oct. 4, 2024) |
| KUNG FU TEA and Design | 5,443,931 | Int'l Class: 43 Restaurant services featuring non-alcoholic | January 1, 2016 | Active (Registered, April 10, 2018; 8 & 15 |

6

| Trademark | U.S. Registration No. | Goods/Services | First Use in Commerce | Status |
|---|---|---|---|---|
| | | drinks, beverages and confections | | accepted Oct. 4, 2024) |
| KUNG FU TEA | 5,588,198 | Int'l Class: 09, 16, 18, 21, 25 (Int'l Class: 09) Cell phone cases; Cases for mobile phones (Int'l Class: 16) Stickers (Int'l Class: 18) Tote bags (Int'l Class: 21) Mugs; Plastic cups; Tea canisters (Int'l Class: 25) Headwear, namely, caps and hats;  T-shirts | December 1, 2016 | Active (Registered, October 15, 2018; 8 & 15 accepted Aug. 21, 2025) |
| KUNG FU TEA and Design | 5,639,864 | Int'l Class: 09, 16, 18, 21, 25, 30 (Int'l Class: 09) Cell phone cases; Cases for mobile phones (Int'l Class: 16) Stickers (Int'l Class: 18) Tote bags (Int'l Class: 21) Mugs; Plastic cups; Tea canisters; Water bottles sold empty | December 1, 2016 | Active (Registered, December 25, 2018; 8 & 15 accepted Oct. 22, 2025) |

| Trademark | U.S. Registration No. | Goods/Services | First Use in Commerce | Status |
|---|---|---|---|---|
| | | (Int'l Class: 25) Headwear, namely, caps and hats; Hoodies; T-shirts (Int'l Class: 30) Tea bags | | |

25.     All of the foregoing registered trademarks, together with the common law rights in those trademarks, are referred to as the KUNG FU TEA Trademarks.

26.     Copies of the Certificates of Registration for Plaintiffs' federally registered KUNG FU TEA Trademarks are attached and incorporated hereto as **Exhibit 1 (Reg. No. 4,497,687); Exhibit 2 (Reg. No. 4,857,505);; Exhibit 3 (Reg. No. 5,443.929); Exhibit 4 (Reg. No. 5,443,930); Exhibit 5 (Reg. No. 5,443,931); Exhibit 6 (Reg. No. 5,588,198); and Exhibit 7 (Reg. No. 5,639,864).**

27.     On an annual basis, Plaintiffs have invested substantial time, effort and money in advertising and promoting their Tea Shops, which offer restaurant services and tea-based flavored drinks and beverages under the KUNG FU TEA Trademarks. Such advertising and promotion of the KUNG FU TEA Trademarks include website advertisements, print media, menus, point of sale advertising, posters, signs and displays on restaurants.

28.     As a result of Plaintiffs' efforts, the KUNG FU TEA Trademarks have come to be associated with Plaintiffs.

29.     Plaintiffs' KUNG FU TEA Trademarks, which are used in connection with franchised Tea Shops, restaurant services and tea-based flavored drinks and beverages, are well known throughout the country, including within this district.

8

30.     Plaintiffs' network of customers and customer referrals have garnered industry-wide goodwill, reputation, and recognition among businesses, families, and individuals throughout the country, including within this jurisdiction.

31.     In view of this, Plaintiffs vigorously enforce their Trademarks and protect their goodwill and brand.

32.     Plaintiffs have derived substantial revenue through their franchised Tea Shops, restaurant services, and tea-based flavored beverages under the Kung Fu Tea brand.

### *The Franchise Agreement*

33.     There are over 300 franchised Tea Shops located throughout the U.S., including over 20 locations in the Commonwealth of Virginia.

34.     Each Tea Shop is a retail shop selling a variety of brew tea, bubble tea, coffee, juices, smoothies, and other hot and cold drinks.

35.     All of the teas and other drinks are prepared in accordance with recipes using Plaintiff KFT Franchising's specified or authorized ingredients.

36.     Plaintiff KFT Franchising and Franchisee entered into a Franchise Agreement dated as of February 4, 2021, to open and operate a franchised Tea Shop located at 24630 Dulles Landing Drive, Sterling, Virginia 20166 (the "Franchise Agreement"). **Exhibit 8**, attached and incorporated hereto.

37.     Pursuant to Section 1.3.2 of the Franchise Agreement, the Franchisee agreed to purchase exclusively from Arms Global Inc., a New York corporation and an affiliate of KFT USA ("Arms Global"), or from other companies specified or approved by KFT Franchising, all of the tea, coffee, concentrates and flavoring ingredients, as well as packaging materials, cups, menu boards, signs and other logoed merchandise that Franchisee will use in the franchised business (the

"Products"). Also pursuant to Section 1.3.2, the Franchisee agreed to sign a supply agreement with Arms Global. **Exhibit 8**, § 1.3.2.

38.    The Franchisee and Arms Global entered into the Supply Agreement on February 4, 2021. **Exhibit 9**, attached and incorporated hereto.

39.    Pursuant to the Franchise Agreement, Section 1.6.15, Plaintiff KFT Franchising had the right to inspect the premises and review materials or supplies found at the premises. *See* **Exhibit 8**, § 1.6.15.

40.    On or about February 21, 2021, Guarantors signed the Guaranty and Assumption of Obligations Agreement ("Guaranty"). **Exhibit 10**, attached and incorporated hereto.

41.    Under the Guaranty, the Guarantors personally agreed to comply with the Franchisee's obligations under Section 3.1 of the Franchise Agreement regarding the Trademarks.

### *Termination of the Franchise Agreement*

42.    On January 21, 2025, KFT Franchising inspected Franchisee's premises and discovered that Defendants were adding protein powder to drinks sold by Defendants to customers without KFT Franchising's approval or knowledge.

43.    On July 3, 2025, KFT Franchising conducted an additional inspection of the Franchisee's premises. During that visit, KFT Franchising's representative noted that the location was using supplies from unauthorized suppliers, including, but not limited to, juices, powder mix, toppings, tea, tea syrups, and straws (the "Defaults").

44.    On July 17, 2025, KFT Franchising, through counsel, sent a letter to Defendants regarding the Defaults (the "Default Letter"). **Exhibit 11**, attached and incorporated hereto.

45.    The Default Letter, among other things, advised Defendants of their defaults and reminded them that pursuant to Section 5.2.3 of the Franchise Agreement, the Franchisee had thirty

(30) days after receipt of a written notice from KFT Franchising of the material default to remedy the Defaults and that failure to do so would result in an immediate termination of the Franchise Agreement. **Exhibit 12**, attached and incorporated hereto.

46. The Franchisee did not cure the Default or otherwise respond to the July 17 letter.

47. On September 10, 2025, KFT Franchising, through counsel, sent another letter to Defendants, informing them that the Franchise Agreement was terminated with immediate effect as a result of Defendants failure to cure the Default (the "Termination Letter"). **Exhibit 13**, attached and incorporated hereto.

48. The Termination Letter instructed Defendants that they were required to (i) cease operations, (ii) remove all signage, supplies, marking materials, forms, and other items containing the KUNG FU TEA trademark and any trademark that is or may be confusingly similar to any trademark from the premises, (iii) remove all marketing materials and other materials containing any KFT Trademarks from all computers and other electronic storage media; (iv) return to KFT all training and operations materials and other KFT items that were in the Franchisee's possession, and if the Franchisee had any copies of any of these items stored electronically on its computers or other media, the Franchisee had to promptly remove them; and (v) notify the telephone company of the termination of the KFT telephone listings of the Franchised Business. *See* **Exhibit 14**.

49. In response to the First Termination Letter, Zhang contacted counsel for Plaintiffs and claimed that Defendants cured the Defaults and were in compliance with their obligations under the Franchise Agreement.

50. In light of Zhangs' verbal representations, KFT Franchising conducted a Quality Assurance Visit on October 10, 2025.

51. At that time, it was discovered that Defendants had not cured the Defaults and

11

continued to use and sell unauthorized product, among other violations.

52.    By letter dated November 6, 2025, KFT Franchising advised Defendants of their continuing default, restated that the Franchise Agreement had been terminated, and demanded that Defendants cease and desist from continued operation as a franchised Tea Shop (the "Cease and Desist Letter"). **Exhibit 15**, attached and incorporated hereto.

53.    The Cease and Desist Letter further advised Defendants that they are monetarily liable to Kung Fu Tea Franchising in the amount of not less than $33,900, pursuant to Section 2.1.7.11 of the Franchise Agreement.

54.    This amount has and will continued to accrue.

55.    In response to the Cease and Desist letter, Zhang contacted KFT Franchising and requested to have a meeting regarding the Defaults and termination, which meeting was held on December 15, 2025.

56.    By email dated December 23, 2025, KFT Franchising provided Zhang with potential resolutions to potentially resolve the dispute between the parties.

57.    Defendants have not responded to the December 23 letter.

58.    At no time during or after the December 15 or in the December 23 letter did KFT Franchising revoke the termination or demand to cease and desist.

59.    Instead, in the December 23 letter, KFT Franchising advised Zhang that in order to have the store reactivated on KFT Franchising's system, Defendants would need to give assurances that all product would be purchased through Arms Global Inc and that KFT Franchising would need to conduct an additional site inspection to confirm compliance.

60.    Defendants disregarded the December 23 email and continue to operate the franchised business without a license, without Plaintiff's permission, and without following any

requirements of Section 5.3.1 of the Franchise Agreement, including ceasing to use the Trademarks. *See* **Exhibit 8**.

61.    Since the termination of the Franchise Agreement, Plaintiffs have no business relationship with Defendants and have never authorized or licensed Defendants to use the KUNG FU TEA Trademarks or any other confusingly similar mark to Plaintiffs' KUNG FU TEA Trademarks for any purpose, including for restaurant services and tea-based flavored drinks and beverages.

62.    Defendants' restaurant services and tea-based flavored drinks and beverages using the infringing KUNG FU TEA mark are marketed to the same class of consumers, through the same channels of trade, and through the same or similar types of advertising as Plaintiffs.

63.    Plaintiffs have no control over Defendants' use of the KUNG FU TEA Trademark, or the quality of services advertised, promoted, and offered by Defendants in connection with the KUNG FU TEA Trademark.

64.    Defendants intend by their use of the KUNG FU TEA Trademark in connection with non-Plaintiffs restaurant services and tea-based flavored drinks and beverages to trade off the resounding consumer goodwill and reputation of the KUNG FU TEA Trademarks and Plaintiffs' KUNG FU TEA branded business.

65.    The acts of Defendants complained of herein have caused, or are likely to cause, irreparable injury to Plaintiffs, including irreparable injury to their good will and reputation, for which Plaintiffs have no adequate remedy at law.

66.    Upon information and belief, Defendants will continue to commit the acts complained of herein unless enjoined.

67.    Upon information and belief, Defendants' acts were deliberately and intentionally

carried out in bad faith, or with a reckless disregard for or with willful blindness to Plaintiffs' rights, for the purpose of trading on Plaintiffs' reputation and diluting the KUNG FU TEA Trademarks.

68.    Pursuant to 15 U.S.C. §1117, Plaintiffs are entitled to recover the costs of this action. The intentional nature of Defendants' unlawful acts renders this an "exceptional case," entitling Plaintiffs to an award of attorneys' fees under 15 U.S.C. §1117(a).

## COUNT I
### Federal Trademark Infringement (15 U.S.C. §§ 1114, 1116)

69.    Paragraphs 1 through 68 are incorporated herein.

70.    The KUNG FU TEA Trademarks are registered on the Principal Register for, *inter alia*, restaurant services and tea-based flavored drinks and beverages.

71.    Defendants continue to use Plaintiffs' KUNG FU TEA Trademarks, without Plaintiffs' consent, in commerce in connection with restaurant services and tea-based flavored beverages.

72.    Defendants' use of the KUNG FU TEA Trademarks is likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the restaurant services and tea-based flavored drinks and beverages offered by Defendants in connection with the Plaintiffs' KUNG FU TEA branded restaurant services and tea-based flavored drinks and beverages.

73.    As a direct and proximate result of the likely confusion, mistake, or deception, Plaintiffs have suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

74.    The likely confusion, mistake, or deception caused by Defendants is in violation of

Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116.

## COUNT II
### Federal Trademark Infringement (15 U.S.C. §§ 1125 (a))

75.     Paragraphs 1 through 68 are incorporated herein.

76.     Plaintiffs have used The KUNG FU TEA mark in connection with restaurant services and tea-based flavored drinks and beverages since at least as early as 2010.

77.     Plaintiffs have used the            mark in connection with restaurant services and tea-based flavored drinks and beverages since at least as early as 2016.

78.     Defendants continue to use Plaintiffs' KUNG FU TEA Trademarks, without Plaintiffs' consent, in commerce in connection restaurant with services and tea-based flavored beverages.

79.     Defendants' use of the KUNG FU TEA Trademarks is likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the restaurant services and tea-based flavored drinks and beverages offered by Defendants in connection with the Plaintiffs' KUNG FU TEA branded restaurant services and tea-based flavored drinks and beverages.

80.     As a direct and proximate result of the likely confusion, mistake, or deception, Plaintiffs have suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

81.     The likely confusion, mistake, or deception caused by Defendants is in violation of Section 43 (a) of the Lanham Act, 15 U.S.C. §§ 1125 (a).

## COUNT III
### Federal False Advertising (15 U.S.C. §1125(a))

82.     Paragraphs 1 through 68 are incorporated herein.

83.     By the acts as described above, Defendants have made false or misleading statements to consumers that Defendants offer for sale and/or sell Plaintiffs' tea-based flavored beverages without authorization from Plaintiffs.

84.     The false or misleading statements have actually deceived or have the capacity to deceive a substantial portion of such consumers.

85.     The deception is material in that it is likely to influence purchasing decisions relating to tea-based flavored beverages.

86.     There is a likelihood of injury to Plaintiffs resulting from the false and misleading statements, including loss of sales of tea-based flavored beverages and loss of goodwill and reputation to Plaintiffs' KUNG FU TEA brand.

87.     Defendants' false and misleading statements relate to Defendants' offer for sale and sale of tea-based flavored beverages provided in interstate commerce.

## COUNT IV
### Breach of Contract

88.     Paragraphs 1 through 68 are incorporated herein.

89.     Defendants' failure and refusal to comply with their post-termination obligations under the Franchise Agreement and Guaranty, including, without limitation, their noncompetition covenant and their obligations to cease all use of the KUNG FU TEA Trademarks, constitute material breaches of the Franchise Agreement and Guaranty.

90.     As a direct and proximate result of Defendants' breaches and the resulting termination of the Franchise Agreement, Plaintiffs have sustained damages in an amount to be

16

proved at trial.

91.    Additionally, as a direct and proximate result of Defendants' continuing breaches, Plaintiffs have suffered and will continue to suffer actual, substantial and irreparable harm, including, but not limited to, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by Defendants' formerly franchised restaurant, lost profits, diminution in the value of Plaintiffs' proprietary and confidential information, and the loss of competitive advantage.

92.    Absent injunctive relief enjoining Defendants' misconduct and ordering specific performance of their post-termination obligations, Defendants' material breaches will continue to cause Plaintiffs irreparable harm.

93.    Pursuant to Section 7.13 of the Franchise Agreement, Plaintiffs are entitled to recover its reasonable costs and expenses, including reasonable attorneys' fees. *See* **Exhibit 8**.

94.    Pursuant to Section 4.4 of the Guaranty, the Guarantors must reimburse KFT for all reasonable expenses incurred in the enforcement of KFT's rights, including reasonable attorneys' fees and expenses. *See* **Exhibit 10**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and respectfully request that the Court enter an order:

A.    Declaring that Defendants' actions described above infringe Plaintiffs' rights in the KUNG FU TEA Trademarks, and accordingly constitute trademark infringement, false advertising, and dilution in violation of 15 U.S.C. §§ 1114, 1116, 1125.

B.    Preliminary and permanently enjoining and restraining Defendants and their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons

17

in active concert or participation with Defendants, at first during the pendency of this action and thereafter perpetually from:

1. continuing to operate the Tea Shop located at 24630 Dulles Landing Drive, Sterling, Virginia 20166;

2. operating any competitive business within five miles of this address or of any KUNG FU TEA shop anywhere in the world for a period of two years from the termination date of September 10, 2025, as required by Section 3.3.3 of the Franchise Agreement between KFT and Franchisee;

3. committing any acts of unfair competition and from implying a false designation of origin or a false description or representation with respect to Plaintiffs' KUNG FU TEA Trademarks;

4. committing any acts of unfair competition by passing off or inducing or enabling others to sell or pass off goods/services that are not Plaintiffs' goods/services as those of Plaintiffs;

5. using Plaintiffs' KUNG FU TEA Trademarks in any manner in the name of their restaurant and on their website, domain name, packaging, labels, signs, posters, menus, literature, display cards, or other advertising, promotional or social media materials, or any other materials related to Defendants' restaurant services and tea-based flavored drinks and beverages, and any other mark, word, or name confusingly similar to Plaintiffs' KUNG FU TEA Trademarks;

6. using any designation that is likely to disparage, tarnish, or dilute the distinctive and famous quality of Plaintiffs' KUNG FU TEA Trademarks; and

7. committing any acts of unfair competition or deceptive or unlawful trade practices

18

calculated to cause members of the trade or purchasing public to believe that Defendants' restaurant services and tea-based flavored drinks and beverages are the restaurant services and tea-based flavored drinks and beverages of Plaintiffs or are sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Plaintiffs or under the supervision or control of Plaintiffs.

C. Requiring that Defendants deliver up to Plaintiffs any and all containers, signs, posters, menus, packaging materials, print media, and advertising, promotional or social media materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to Plaintiffs' KUNG FU TEA Trademarks;

D. Requiring that Defendants, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Plaintiffs' counsel a written report, under oath, setting forth details of the manner in which Defendants have complied with the Court's order pursuant to Paragraphs A, B, and C above.

E. Requiring Defendants to account and pay over to Plaintiffs all damages sustained by Plaintiffs, in the amount to be proven at trial but expected to be at least $56,100.00, Defendants' profits, Plaintiffs' attorneys' fees and costs, and ordering that the amount of damages and profits awarded Plaintiffs be increased three times the amount thereof.

F. Awarding Plaintiffs such other relief as the Court may deem just and proper.

Dated: April 28, 2026.

Respectfully submitted,

_____/s/  Caroline L. Callahan_____
Caroline L. Callahan VSB #88497
OFFIT KURMAN, P.C.
8000 Towers Crescent Drive, Suite 1400
Tyson's Corner, Virginia 22182
Tel: 703.745.1815
Fax: 703.745.1835
Caroline.Callahan@offitkurman.com

*Counsel for Plaintiffs KF Tea USA Inc.*
*& KF TEA Franchising LLC*

## VERIFICATION

_Wen chi Lee_ , being duly sworn, deposes and says:

I am the ___CSO___ of Plaintiff KF Tea USA Inc. and ___CSO___ of Plaintiff KF Tea Franchising LLC in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_Wen chr Lee_

Sworn to before me this _6_ day of April, 2026

_____
Notary Public

4916-0228-7258, v. 2

Richard Lee
Notary Public, State of New York
Registration No.: 01LE6371340
Qualified in Queens County
Commission Expires February 26, 2030

21